# Supreme Court of Florida

No. SC20-641

**DARRYL LEN MORGAN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

November 3, 2022

PER CURIAM.

We have for review *Morgan v. State*, 293 So. 3d 1081 (Fla. 2d DCA 2020), in which the Second District Court of Appeal held that an order granting a rule 3.800(a)[1] motion and determining that a sentence was illegal was not a final order but remained subject to reconsideration until a final order imposing a corrected sentence was entered. We accepted jurisdiction based on the Second District's certification of conflict. *See* art. V, § 3(b)(4), Fla. Const. Based on the nature of proceedings to correct an illegal sentence

---

1. Fla. R. Crim. P. 3.800(a).

under rule 3.800(a), we agree with the conclusion reached by the Second District.

## I

In 1979, Darryl Len Morgan was convicted—based on a nolo contendere plea—of second-degree murder for an offense committed when he was a juvenile. He was sentenced to life in prison with the possibility of parole after twenty-five years. *Morgan,* 293 So. 3d at 1082. In September 2016, Morgan filed a rule 3.800(a) motion claiming that this sentence was an illegal sentence. *Id.* His claim relied on the decision of the Supreme Court in *Miller v. Alabama,* 567 U.S. 460 (2012), and this Court's interpretation of *Miller* in *Atwell v. State,* 197 So. 3d 1040 (Fla. 2016). *Miller* held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. In *Atwell,* this Court held that the imposition on a juvenile of a sentence of life with the possibility of parole under "Florida's existing parole system" was "virtually indistinguishable from a sentence of life without parole" and was "therefore unconstitutional." 197 So. 3d at 1041. Based on this case law, in January 2017, the trial court

entered an order granting Morgan's motion, ruling that the life-with-the-possibility-of-parole sentence was an illegal sentence. *Morgan*, 293 So. 3d at 1082. This order did not purport to vacate the sentence, but simply ordered that steps be taken to conduct a resentencing hearing.

That resentencing hearing was—at the repeated request of Morgan—delayed for an extended period until it was finally set to take place on August 17, 2018. *Id.* But the landscape of Florida law changed dramatically before the resentencing could occur. On July 12, 2018, *State v. Michel* issued, receding from *Atwell* and holding "that juvenile offenders' sentences of life with the possibility of parole after 25 years do not violate the Eighth Amendment of the United States Constitution as delineated by the United States Supreme Court." *State v. Michel*, 257 So. 3d 3, 4 (Fla. 2018). Citing *Michel*, the State filed a motion for reconsideration of the order granting Morgan's rule 3.800(a) motion. Ultimately, the State's motion was granted, the prior order granting the rule 3.800(a) motion was vacated, and Morgan's motion was denied. Morgan then appealed to the Second District.

## II

In the Second District, Morgan contended that the order entered in January 2017 determining his sentence to be an illegal sentence was final and that the lower court was accordingly without jurisdiction to reconsider that order. *Morgan*, 293 So. 3d at 1082. Relying on its earlier decisions interpreting rule 3.800(a) in *State v. Rudolf*, 821 So. 2d 385 (Fla. 2d DCA 2002), and *Stewart v. State*, 647 So. 2d 219 (Fla. 2d DCA 1994), the Second District rejected Morgan's argument. 293 So. 3d at 1083-84. The court also cited the decisions of the Third District Court of Appeal in *State v. Huerta*, 38 So. 3d 883, 884-85 (Fla. 3d DCA 2010), and the Fourth District Court of Appeal in *State v. Delvalle*, 745 So. 2d 541, 542 (Fla. 4th DCA 1999), both of which held—like *Rudolf* and *Stewart*—that rule 3.800(a) proceedings are not final until a resentencing order is entered because prior to that point judicial labor is still required. 293 So. 3d at 1084.

The Second District certified conflict with the decisions of the First District Court of Appeal in *Jordan v. State*, 81 So. 3d 595 (Fla. 1st DCA 2012), and *Simmons v. State*, 274 So. 3d 468 (Fla. 1st DCA 2019), the Fourth District in *Jones v. State*, 279 So. 3d 172 (Fla.

4th DCA 2019), and the Fifth District Court of Appeal in *Magill v. State*, 287 So. 3d 1262 (Fla. 5th DCA 2019), together with their progeny. 293 So. 3d at 1086. Although all of these conflict cases addressed the same question concerning finality in rule 3.800(a) proceedings that is presented by the case now on review, they each relied on precedent from this Court interpreting the application of rule 3.850. *Jordan* relied on *State v. White*, 470 So. 2d 1377 (Fla. 1985), which recognized the right of the state to appeal an order vacating a death sentence in proceedings under rule 3.850. *Jordan*, 81 So. 3d at 596. *Simmons*, *Jones*, and *Magill* all relied on *Taylor v. State*, 140 So. 3d 526, 528 (Fla. 2014), which in interpreting rule 3.850 held that "an order disposing of a postconviction motion which partially denies and partially grants relief is a final order for purposes of appeal, even if the relief granted requires subsequent action in the underlying case, such as resentencing." *See Magill*, 287 So. 3d at 1262-63; *Jones*, 279 So. 3d at 173-74; *Simmons*, 274 So. 3d at 471-72.

The Second District concluded that because it "addressed rule 3.850 collateral attacks . . . rather than only illegal sentences under rule 3.800(a)," *Taylor* was not controlling. *Morgan*, 293 So. 3d at

1085.  The Second District pointed out that *Taylor*'s analysis relied on the provision of rule 3.850(f)(8)(C), which states that the "order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal," to support its conclusion that a resentencing proceeding after the granting of 3.850 relief was a new and separate proceeding.  293 So. 3d at 1083 (quoting *Taylor*, 140 So. 3d at 529).  In distinguishing *Taylor*—as well as *White*—the court stated: "Unlike rule 3.850, rule 3.800 does not state that an order resolving 'all the claims raised in the motion' shall be a final order."  *Id.*  The court also observed that unlike rule 3.850 proceedings, which create a "new, separate proceeding" from the underlying criminal case, a rule 3.800 motion is "filed in continuation of the original criminal proceeding."  *Id.* (quoting *Rudolf*, 821 So. 2d at 386).

In support of its conclusion accepting the State's argument that reconsideration of the order granting Morgan's motion was proper, the Second District also relied on the provisions of Florida Rule of Appellate Procedure 9.140(c), which authorizes the State to appeal orders "granting relief under Florida Rules of Criminal Procedure 3.801, 3.850, 3.851, or 3.853"—notably omitting any

reference to rule 3.800. *Morgan*, 293 So. 3d at 1084 (quoting Fla. R. App. P. 9.140(c)(1)(J)).

After the Second District decided *Morgan*, the en banc First District in *Rogers v. State*, 296 So. 3d 500, 511 (Fla. 1st DCA 2020), held that orders granting relief under rule 3.800(a) are "not final or appealable until resentencing has occurred"—thus aligning itself with *Morgan* (as well as the Third District) and receding from *Jordan*, *Simmons* and their progeny. But the law of the Fourth and Fifth Districts has remained in conflict with *Morgan*.

**III**

In his challenge to the Second District's decision, Morgan argues that the trial court order granting his rule 3.800(a) motion was a final order (even if not appealable) and was therefore not subject to reconsideration. In support of this argument, he relies primarily on our decision in *Taylor*, and contends that on the issue of finality there is no relevant difference between rule 3.850 and rule 3.800(a). Morgan emphasizes *Taylor*'s statement that "postconviction proceedings and resentencing proceedings are separate, legally discrete proceedings." 140 So. 3d at 529. He further reasons that judicial labor is complete once a court enters

an order granting a motion under either rule 3.850 or rule 3.800(a), and that under either rule a resentencing proceeding is a distinct proceeding. Recognizing that rule 9.140(c)(1)(J) supports the conclusion that an order granting a rule 3.800(a) motion is not appealable by the State, Morgan nonetheless asserts that such orders are final. Morgan cites as supplemental authority *State v. Jackson*, 306 So. 3d 936, 945 (Fla. 2020), in which we held that an order vacating a death sentence in a successive rule 3.851 proceeding was final and the sentence could not be "retroactively reinstated" based on a change in the governing law that occurred prior to resentencing.[2]

The State contends that the order granting Morgan's rule 3.800(a) motion was nonfinal and therefore was—as the Second District ruled—subject to reconsideration. The State responds to Morgan's reliance on *Taylor* by arguing that because rule 3.800(a) is "entirely different" from rule 3.850, *Taylor*'s application of rule 3.850 is not controlling here. In distinguishing *Taylor*, the State—

---

2. Morgan also makes a meritless argument based on Florida Rule of Criminal Procedure 3.192, which we reject without further comment.

- 8 -

like the *Morgan* court—points to *Taylor*'s reliance on the rule of finality in rule 3.850(f)(8)(C), and the State emphasizes the absence of an analog in rule 3.800. Further explaining the relevant differences between rule 3.800(a) and rule 3.850, the State argues that rule 3.800(a) authorizes the court to *correct* an illegal sentence—rather than to *vacate* such a sentence—and that the "process of correction" is not complete until the corrected sentence has been entered. The State also contends that rule 3.800(a) is not properly described as a "postconviction rule," and thus does not fall within the sweep on *Taylor*'s teaching concerning the distinction between postconviction proceedings and resentencing proceedings.

## IV

As the arguments of the parties suggest, the resolution of the issue presented here turns on the scope of our holding in *Taylor*. We reject the expansive reading of *Taylor*'s interpretation of rule 3.850 urged by Morgan and conclude that *Taylor* does not apply to proceedings under rule 3.800(a). We agree with the State's argument that in rule 3.800(a) proceedings the process of sentence correction is not complete until an order is entered imposing a corrected sentence. Until that point, there is no final order.

- 9 -

Judicial labor in the cause remains to be done, and an order granting a rule 3.800(a) motion is subject to reconsideration. In this respect, the structure of rule 3.800(a) is fundamentally different from rule 3.850, under which resentencing proceedings are separate and distinct from the prior proceedings that result in an order vacating a sentence.

*Taylor* dealt with a question involving the finality of an order addressing claims raised in a rule 3.850 motion. We framed the specific question on review as "whether an order disposing of a postconviction motion which partially denies and partially grants relief is a final order for purposes of appeal, when the relief granted requires subsequent action in the underlying case, such as resentencing." 140 So. 3d at 527. And we held that such an order was indeed a final order. *Id.* In doing so, we rejected the view of the Fifth District that such an order "was not a final appealable order because the resentencing required further judicial labor in the underlying case." *Id.* at 528. Instead, we agreed with the reasoning of the Second District in *Cooper v. State*, 667 So. 2d 932, 933 (Fla. 2d DCA 1996): "An order denying in part and granting in part relief . . . marks the end of the judicial labor which is to be

expended on the motion, and the order is final for appellate purposes." 140 So. 3d at 528.

In *Taylor*, we relied on the then recently adopted provision of rule 3.850(f)(8)(C), which states that an "order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal." *Id.* at 529 (quoting *In re Amends. to Fla. Rules of Crim. Proc. & Fla. Rules of App. Proc.*, 132 So. 3d 734, 750 (Fla. 2013)). We rejected the State's argument that allowing an appeal before an ordered resentencing would "encourage piecemeal litigation." *Id.* We concluded that "because resentencing is an entirely new, independent proceeding, an appeal from the underlying postconviction proceeding does not foster piecemeal litigation or waste judicial resources." *Id.*

But proceedings under rule 3.800(a) are not equivalent to proceedings under rule 3.850. Although both types of proceedings can result in relief from final criminal sentences, the two different rules are structured differently and therefore operate differently. Admittedly, rule 3.800 proceedings are commonly referred to as postconviction proceedings, but rule 3.800 is located in the portion

of the rules—part XIV (Sentence)—governing the imposition of sentences by sentencing judges, while rule 3.850 is in the part of the rules—part XVII (Postconviction Relief)—relating to postconviction proceedings. Rule 3.850 characterizes motions to obtain relief from sentences as "motion[s] to vacate a sentence." Fla. R. Crim. P. 3.850(b). There is no analogous provision in rule 3.800. Sentences are corrected under rule 3.800(a) as an extended part of the sentencing process in the underlying criminal case. Under rule 3.850, sentences are vacated and then—in a subsequent, separate proceeding—a new sentence is imposed.

This understanding of the differences in the way the two rules operate fits with the fact that there is no provision in rule 3.800 analogous to the finality provision of rule 3.850(f)(8)(C), a provision which *Taylor* relied on to support its conclusion that a resentencing proceeding after an order granting relief under rule 3.850 was a separate and distinct proceeding. It is similarly consistent with rule 9.140(c)(1)(J), which authorizes state appeals of orders "granting

relief under [rules] 3.801, 3.850, 3.851 or 3.853" but does not

authorize appeals of orders granting relief under rule 3.800(a).[3]

And our understanding of the difference between rule 3.850

and rule 3.800(a) also fits with what we have previously said about

rule 3.800(a).  Although we have not previously directly decided the

question, we have relied on authority holding that an order granting

a rule 3.800 motion is not a final order.  In *State v. Gaines*, 770 So.

2d 1221, 1224 (Fla. 2000), we held that an order suppressing

evidence during trial was not a final order.  We readily applied the

traditional test of finality—that is, "whether the order in question

---

3.  The dissent relies on section 924.066(2), Florida Statutes (2017), a statutory provision that is not mentioned—much less argued—by either Morgan or the State.  Of course, we do not overturn a decision on review on the basis of an argument that has not been presented.  In any event, the dissent's assertion that section 924.066(2) provides the requisite statutory "authority" for an appeal in this case, dissenting op. at 21, apparently is based on the dissent's underlying assertion that the order at issue is "a final order," dissenting op. at 18.  Because we instead conclude that the order at issue is a nonfinal order, section 924.066(2) is not relevant.  *See* art. V, § 4(b)(1), Fla. Const. (establishing that review of interlocutory orders by district courts is only available "to the extent provided by rules adopted by the supreme court"); *State v. Gaines*, 770 So. 2d 1221, 1223 (Fla. 2000) ("[A]rticle V, section 4(b)(1) . . . vests exclusive power in this Court to authorize non-final appeals . . . .").  We likewise reject the dissent's reliance on Florida Rule of Appellate Procedure 9.140(c)(1)(P), which addresses appeals of certain "final orders."

constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected." *Id.* at 1223-24 (quoting *S.L.T. Warehouse Co. v. Webb*, 304 So. 2d 97, 99 (Fla. 1974)). In explaining our conclusion that "an order or ruling suppressing evidence at trial is a non-final order because judicial labor is still required to effectuate a termination of the case," we cited as analogous the decision of the Fourth District in *Delvalle*, which we characterized as holding that "an order granting the defendant's rule 3.800(a) motion was not a final order where the defendant had not been resentenced and judicial labor was still required." *Id.* at 1224. Morgan has presented nothing to show that our reliance on *Delvalle* in *Gaines* was mistaken.

Finally, Morgan's reliance on *Jackson* is misplaced. Indeed, the reasoning in *Jackson* supports our understanding of the difference between rule 3.800(a) proceedings and postconviction proceedings in which resentencing takes place after the entry of an order vacating a sentence.

In *Jackson*, as here, we dealt with circumstances in which the relevant legal landscape had shifted. We addressed the question

"whether a death sentence that was vacated by the postconviction court can be 'reinstated' if the State never appealed the final order granting relief, the resentencing has not yet taken place, and this Court has since receded from the decisional law on which the sentence was vacated." 306 So. 3d at 937. In rejecting the State's argument for "reinstatement" of the sentence, we focused on the fact that the sentence had been vacated by a final order. Our analysis relied on the provisions of rule 3.851(f)(5)(F), which contains a finality provision identical to the finality provision of rule 3.850(f)(8)(C). *Id.* at 940-41. Based on the finality of a rule 3.851 order vacating a death sentence, we thus held that "vacated death sentences cannot be retroactively reinstated." *Id.* at 945. We rejected reliance on any analogy to rule 3.800 in interpreting rule 3.851, and noted also that "rule 3.800(a) differs considerably from rule 3.850." *Id.* at 943.

Unlike Jackson's sentence, Morgan's sentence was not vacated. The order granting relief on Jackson's rule 3.851 motion and vacating his death sentence was a final order. The order granting Morgan's rule 3.800(a) motion was not a final order but left

- 15 -

his sentence in place until further action was taken by the sentencing judge.

# V

The trial court—based on a change in the governing law—correctly reconsidered its initial nonfinal order granting Morgan's rule 3.800(a) motion. We therefore approve the decision of the Second District to affirm the trial court, and we disapprove the decisions in *Jordan*, *Simmons*, *Jones*, and *Magill*, together with their progeny.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and
FRANCIS, JJ., concur.
POLSTON, J., dissents with an opinion, in which LABARGA, J.,
concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

In 1979, Darryl Morgan was sentenced as a juvenile offender to life with the possibility of parole after 25 years on a second-degree murder conviction. In 2016, Morgan filed a postconviction motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), arguing that he was entitled to

resentencing according to *Miller v. Alabama,* 567 U.S. 460 (2012),

and *Atwell v. State,* 197 So. 3d 1040, 1041 (Fla. 2016) ("We

conclude that Florida's existing parole system, as set forth by

statute, does not provide for individualized consideration of [the

defendant]'s juvenile status at the time of the murder, as required

by *Miller,* and that his sentence [of life with the possibility of parole

after 25 years], which is virtually indistinguishable from a sentence

of life without parole, is therefore unconstitutional."). In 2017, the

postconviction court granted Morgan's motion and ordered

resentencing. The State "filed a notice of appeal but voluntarily

dismissed the appeal before it was perfected." *Morgan v. State,* 293

So. 3d 1081, 1082 (Fla. 2d DCA 2020). Over a year and a half later,

and before resentencing occurred, the State filed a motion for

reconsideration of the order granting Morgan's rule 3.800(a) motion

based on this Court's decision in *State v. Michel,* 257 So. 3d 3, 4

(Fla. 2018), which receded from *Atwell* and held "that juvenile

offenders' sentences of life with the possibility of parole after 25

years do not violate the Eighth Amendment of the United States

Constitution [and] [t]herefore, such juvenile offenders are not

entitled to resentencing." The postconviction court granted the

- 17 -

State's motion, vacated its previous order, and denied Morgan's rule 3.800(a) motion.

I agree on the merits that, pursuant to *Michel*, Morgan's initial sentence was not illegal. However, I dissent from the majority's decision that gives a postconviction court unlimited time to reconsider its ruling on a rule 3.800(a) motion granting resentencing. Because the postconviction court's order granting resentencing was a final order for purposes of appeal, and the State did not timely pursue rehearing and voluntarily dismissed its appeal, I would conclude that the postconviction court lacked authority to vacate its initial order granting Morgan's rule 3.800(a) motion.

In determining the finality of an order, we examine "whether the order in question constitutes an end to the judicial labor in the cause." *State v. Gaines*, 770 So. 2d 1221, 1223-24 (Fla. 2000) (quoting *S.L.T. Warehouse Co. v. Webb*, 304 So. 2d 97, 99 (Fla. 1974)). Morgan was initially sentenced in 1979. More than 35 years later, Morgan filed a postconviction rule 3.800(a) motion to correct an illegal sentence, and the trial court entered an order granting Morgan's resentencing. Because this case arises in the

collateral context, the difference between a postconviction proceeding and a resentencing is critical. This Court has made clear that when ordered in the postconviction context, "resentencing is an entirely new, independent proceeding." *Taylor v. State,* 140 So. 3d 526, 529 (Fla. 2014); *see also State v. Collins*, 985 So. 2d 985, 988 (Fla. 2008) ("[R]esentencing is a de novo proceeding . . . ."). We have further elaborated on the distinction between "resentencing" and "postconviction proceedings":

> If a postconviction proceeding is not a step in a criminal prosecution, and if a resentencing proceeding is legally distinct from a postconviction proceeding, then a postconviction court's final order granting a resentencing cannot be analogized to a nonfinal, interlocutory order. Rather, that final order, absent rehearing or appeal, brings an end to the postconviction proceeding and thus "should be treated as a final judgment."

*State v. Jackson,* 306 So. 3d 936, 942 (Fla. 2020) (quoting

*Clearwater Fed. Sav. & Loan Ass'n v. Sampson,* 336 So. 2d 78, 79

(Fla. 1976)). To summarize, because a postconviction proceeding and a resentencing are legally distinct, judicial labor is complete once a postconviction court enters an order granting resentencing, and the right to challenge that order expires absent a timely and authorized motion for rehearing or appeal.

Here, the postconviction court's initial order granting resentencing became final when the State failed to timely seek rehearing and voluntarily dismissed its appeal. *See Jones v. State*, 279 So. 3d 172, 174 (Fla. 4th DCA 2019) ("The order granting resentencing became final when neither party moved for rehearing or appealed that order."); *Magill v. State*, 287 So. 3d 1262, 1262 (Fla. 5th DCA 2019) ("We find that the postconviction court lacked authority to vacate its initial order granting Magill's [rule 3.800(a)] motion because that order became final when neither party moved for rehearing or appealed."). The State did not timely seek rehearing. *See* Fla. R. Crim. P. 3.800(b)(1)(B) ("A party may file a motion for rehearing of any signed, written order . . . within 15 days of the date of service of the order or within 15 days of the expiration of the time period for filing an order if no order is filed.").

As to the State's ability to appeal, the majority refers to the absence of an express finality provision in rule 3.800 and Florida Rule of Appellate Procedure 9.140(c)(1)(J), which authorizes the State to appeal orders "granting relief under [rules] 3.801, 3.850, 3.851 or 3.853" and not under rule 3.800(a). *See* majority op. at 12-13. "The State's right to appeal in a criminal case must be

'expressly conferred by statute.' " *State v. McMahon*, 94 So. 3d 468, 472 (Fla. 2012) (quoting *Exposito v. State*, 891 So. 2d 525, 527 (Fla. 2004)). The State's authority in this case is set forth in rule 9.140 and section 924.066, Florida Statutes (2017).

Specifically, rule 9.140(c)(1)(P) allows the State to appeal an order "as otherwise provided by general law for final orders." Further, the Florida Legislature, in chapter 924, titled Criminal Appeals and Collateral Review, has specifically provided for an appeal by the State in this instance. The plain language of section 924.066(2) provides: "*Either the state or a prisoner in custody may obtain review in the next higher state court of a trial court's adverse ruling granting or denying collateral relief.* The state may obtain review of any trial court ruling that fails to enforce a procedural bar." (Emphasis added.); *see also Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1382 n.3 (11th Cir. 2006) (citing section 924.066(2) for the proposition that the defendant "had thirty days in which to file an appeal from the denial of his motion for post-conviction relief under Rule 3.800(a)"). Indeed, the State did file a notice of appeal of the initial order granting resentencing but voluntarily dismissed the appeal before it was perfected. Accordingly, once the appeal

was voluntarily dismissed, the order granting resentencing became final, and the postconviction court lacked the authority to enter a second order rescinding the initial order and denying resentencing.

The majority's decision that gives a postconviction court unlimited time to reconsider its ruling on a rule 3.800(a) motion granting resentencing is not in accordance with Florida law as set forth above or with policy expressed by the Legislature and in the Florida Constitution. *See* § 924.051(8), Fla. Stat. (2017) ("It is the intent of the Legislature that all terms and conditions of direct appeal and collateral review be strictly enforced, including the application of procedural bars, to ensure that all claims of error are raised and resolved at the first opportunity. It is also the Legislature's intent that all procedural bars to direct appeal and collateral review be fully enforced by the courts of this state."); art. I, § 16(b)(10), Fla. Const. (providing victims the right to prompt and final resolution including collateral attacks).

The majority attempts to distinguish and isolate our precedent by correlating the finality of an order granting resentencing with whether a motion is filed pursuant to rule 3.800 or rule 3.850. *See* majority op. at 9-16. The majority states that its decision is

"[b]ased on the nature of proceedings to correct an illegal sentence under rule 3.800(a)" and that "[s]entences are corrected under rule 3.800(a) as an extended part of the sentencing process in the underlying criminal case." Majority op. at 1-2, 12. However, the majority fails to acknowledge that the facts of this case involve a collateral postconviction proceeding, not a continuation of the underlying criminal proceeding. Finality is based on whether the order brings an end to judicial labor, and in a postconviction proceeding, under either rule 3.800(a) or rule 3.850, judicial labor is complete once a court enters an order granting resentencing, and the right to challenge that order expires absent a timely and authorized motion for rehearing or appeal. To conclude otherwise misapprehends the origination and nature of postconviction collateral proceedings. *See Jackson*, 306 So. 3d at 939 ("[T]he State erroneously assumes that a postconviction proceeding is a step in the criminal prosecution and that a resentencing proceeding is a continuation of a postconviction proceeding. Our caselaw says otherwise."); *see also State v. Bolyea*, 520 So. 2d 562, 563 (Fla. 1988) (explaining that postconviction motions are collateral attacks on the underlying judgments that were traditionally addressed by

writs of habeas corpus, and the postconviction rule "is a procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus [and] was designed to simplify the process of collateral review and prescribe both a fact-finding function in the lower courts and a uniform method of appellate review").

For the reasons above, because the postconviction court's initial order granting resentencing was a final order that marked an end of judicial labor as to the question of Morgan's entitlement to resentencing, and because that order was not subject to a timely motion for rehearing and the State voluntarily dismissed its appeal, I would conclude that the court had no authority to enter a second order vacating the initial order and denying resentencing.

I respectfully dissent.

LABARGA, J., concurs.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

    Second District – Case No. 2D18-4940

    (Pinellas County)

Howard L. "Rex" Dimmig, II, Public Defender, and Maureen E. Surber, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, Tallahassee, Florida, Carla Suzanne Bechard, Chief Assistant Attorney General, and Allison C. Heim, Assistant Attorney General, Tampa, Florida,

for Respondent